[Civ. No. 40034. Second Dist., Div. Four. Apr. 19, 1973.]

Estate of ROSE BADIVIAN, Deceased.
FLORENCE MANASELIAN JAMGOCHIAN,
Claimant and Appellant, v.
ARTHUR L. MANASELIAN et al., Defendants and Respondents.

**COUNSEL**

Robert E. Mitchell for Claimant and Appellant.

Svenson & Garvin, John F. Garvin and Christopher Jones for Defendants and Respondents.

**OPINION**

**DUNN, J.**—According to the clerk's transcript, which is the only record before us, Rose Badivian died February 2, 1967, leaving her estate to her two sons, Arthur L. Manaselian and Norman Badivian. Each son became entitled to receive $7,362.43 from the estate, which was probated in the Los Angeles County Superior Court. This appeal involves the trial court's determination of priorities between judgment creditors levying on the legacy of Arthur Manaselian, only.

The court found that John and Christine Johnson obtained a $5,000 judgment against Arthur Manaselian and his then wife, Florence Manaselian, on December 24, 1958.[1] On February 29, 1968, the Johnsons

---

[1]Both parties agree on this date although it is erroneously stated in the court's findings as December 24, 1968.

caused a writ of execution to issue on their judgment which, with accruals, then amounted to $8,221.08. A copy of the writ of execution[2] and a notice of attachment were filed with the Clerk of the Los Angeles County Superior Court on March 7, 1968, and both were served, in compliance with Code of Civil Procedure section 561, on Arthur Manaselian, as administrator C.T.A. of his mother's estate, on March 19, 1968.

The court further found that on June 7, 1961, Florence (Manaselian) Jamgochian obtained a judgment against her former husband, Arthur Manaselian, in a divorce proceeding. On December 11, 1968, she caused a writ of execution to issue on this judgment which, with accruals, then amounted to $5,894.35. A copy of this writ of execution and a notice of attachment were served on Arthur Manaselian, as administrator C.T.A. of his mother's estate, on December 20, 1968, and were filed with the court clerk on December 23, 1968.

The trial court concluded that the Johnson's levy was prior in time, was valid, and entitled them to Arthur Manaselian's distributive share of his mother's estate; this share was ordered to be delivered to the officer making the levy, pursuant to Code of Civil Procedure section 561.

■■ The record makes it clear that the writ on the Johnson's judgment was issued and served before 10 years had passed and, therefore, before their judgment became stale under Code of Civil Procedure section 681.[3] Since it was issued and served before appellant Jamgochian took steps to levy execution on her judgment, its priority was established. (Civ. Code, § 2897; 5 Witkin, Cal. Procedure (2d ed. 1971) Enforcement of Judgment, §§ 74, 75, pp. 3447-3448 and cases cited.)

Appellant argues, however, that respondents' execution was "not completed until the decree of distribution has become final"; and, inasmuch as there was no such decree until September 25, 1970, more than 11 years after the date of respondents' judgment, the judgment became stale and the writ issued upon it void. Appellant contends that, unless the decree of distribution is made before the expiration date of a judgment, no valid judgment exists on the date of distribution, for which reason any effort to execute upon it fails. We do not agree.

---

[2]Although Code of Civil Procedure section 561 speaks of a writ of attachment, a writ of execution is given the same validity under these circumstances. (*Estate of Lind* (1934) 1 Cal.2d 291 [34 P.2d 486]; *Estate of Lawrence* (1968) 267 Cal.App.2d 77, 80 [72 Cal.Rptr. 851].)

[3]Code of Civil Procedure section 681 reads in pertinent part: "The party in whose favor judgment is given may, at any time within 10 years after the entry thereof, have a writ or order issued for the execution or enforcement of the judgment."

In her argument appellant cites section 1021 of the Probate Code as support for her contention.[4] We do not find it so. Appropriate service of a writ of execution ("attachment," fn. 2) on the personal representative of a decedent creates a lien on the distributive interest of the debtor heir, legatee or devisee. Physical expropriation of the personalty is not necessary to perfect the lien since all of a decedent's personal property is in the custody of the estate administrator. If physical expropriation of the property were permissible, respondents' lien could have been perfected on the date of levy. The fact that physical expropriation and an execution sale are impermissible by statute (Code Civ. Proc., § 561) does not deprive the lien of its initial validity; for, if validity could be divested by the passage of time (i.e.: delay in distribution) over which a levying creditor has no control, obvious unfairness could result.

While the levy of execution binds property for only one year from the time of issuance, the statute specifically exempts a levy on the interest of heirs, devisees and legatees from the one-year limitation.[5] This indicates a legislative intent that the lien, once effected, continues to the time of distribution, irrespective of the fact that the judgment upon which it rests may have been in existence for more than 10 years.

The judgment is affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.

---

[4]Probate Code section 1021 reads: "In its decree, the court must name the persons and the proportions or parts to which each is entitled, and such persons may demand, sue for, and recover their respective shares from the executor or administrator, or any person having the same in possession. Such order or decree, when it becomes final, is conclusive as to the rights of heirs, devisees and legatees."

[5]Code of Civil Procedure section 688 reads in part: "Until a levy, the property is not affected by the execution; but no levy shall bind any property for a longer period than one year from the date of the issuance of the execution, except a levy on the interests or claims of heirs, devisees, or legatees in or to assets of deceased persons remaining in the hands of executors or administrators, thereof prior to distribution and payment."